## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONOLITHIC POWER SYSTEMS, INC.,

      Plaintiff, Counterclaim-Defendant,

v.

REED SEMICONDUCTOR CORP.,

      Defendant, Counterclaim-Plaintiff.

C.A. No. 1:23-cv-01155-JFM

## DEFENDANT REED SEMICONDUCTOR CORP.'S FIRST AMENDED ANSWER TO THE AMENDED COMPLAINT, DEFENSES, AND COUNTERCLAIMS

Defendant Reed Semiconductor Corp. ("Reed" or "Defendant") by and through its undersigned counsel, hereby answers the Amended Complaint of Plaintiff Monolithic Power Systems, Inc. ("MPS" or "Plaintiff"), following the respectively numbered paragraphs of the Amended Complaint, as follows:

### RESPONSE TO MPS'S ALLEGATIONS REGARDING THE NATURE OF THE ACTION

1.    The allegation contained in Paragraph 1 sets forth a legal conclusion to which no response is required. Reed admits that Plaintiff asserts a claim for patent infringement. Reed denies all allegations of infringement and any remaining allegations contained in Paragraph 1.

2.      Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2.  Accordingly, these allegations are denied.

3.      Reed admits that it competes in the power convertor market. Reed denies the remainder of the allegations contained in Paragraph 3.

4.      Reed admits that Exhibit 1 purports to be a copy of U.S. Patent No. 9,590,608. Reed denies all other allegations in Paragraph 4.

**RESPONSE TO MPS'S ALLEGATIONS REGARDING THE PARTIES**

5.      Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.  Accordingly, these allegations are denied.

6.      Reed admits that it is a corporation organized under the laws of Delaware with its principal place of business at 875 Centerville Road, Warwick, RI, 02886.

**RESPONSE TO MPS'S ALLEGATIONS REGARDING
SUBJECT MATTER JURISDICTION**

7.      The allegations contained in Paragraph 7 set forth legal conclusions to which no response is required.  To the extent necessary, Reed admits that federal courts generally have subject-matter jurisdiction over claims for patent infringement. Any remaining allegations in this Paragraph are denied.

## RESPONSE TO MPS'S ALLEGATIONS REGARDING
## PERSONAL JURISDICTION, VENUE, AND JOINDER

8.      Reed admits that it is incorporated in Delaware. All other factual allegations in Paragraph 8 are denied. Reed specifically denies that it has committed acts of patent infringement in Delaware or in any other State. The remainder of Paragraph 8 sets forth legal conclusions to which no response is required.

9.      Reed admits that it is incorporated in Delaware. All other factual allegations in Paragraph 9 are denied. Reed specifically denies that it has committed acts of patent infringement in Delaware or in any other State. The remainder of Paragraph 9 sets forth legal conclusions to which no response is required.

## RESPONSE TO MPS'S ALLEGATIONS REGARDING THE MPS PATENT

10.      Reed admits that United States Patent No. 9,590,608 ("the '608 Patent") purports on its face to have issued on March 7, 2017 from an application filed on August 18, 2015 and to claim priority from China Patent Application, No. 20141039070.8.  Reed further admits that Exhibit 1 purports to be a copy of the '608 Patent.  Reed denies that the '608 Patent was duly and legally issued.  Reed lacks information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.  Accordingly, these allegations are denied.

11.      Admitted.

12.      Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.  Accordingly, these allegations are denied.

3

13.     Admitted.

14.     Reed denies that the '608 Patent is valid and enforceable.

### RESPONSE TO MPS'S ALLEGATIONS REGARDING FACTUAL BACKGROUND

15.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.  Accordingly, these allegations are denied.

16.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.  Accordingly, these allegations are denied.

17.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.  Accordingly, these allegations are denied.

18.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.  Accordingly, these allegations are denied.

19.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.  Accordingly, these allegations are denied.

20.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.  Accordingly, these allegations are denied.

21.     Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.  Accordingly, these allegations are denied.

22.     The '608 patent speaks for itself. To the extent Paragraph 22 contains assertions reflecting MPS's belief with respect to the disclosure of '608 patent, Reed

lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.  Accordingly, these allegations are denied.

## RESPONSE TO MPS'S ALLEGATIONS REGARDING DEFENDANT'S ALLEGED INFRINGEMENT

23.    Denied.

24.    Reed admits that it designs power converters. All remaining allegations in Paragraph 24 are denied.

25.    Reed admits that Exhibit 2 to the Amended Complaint purports to be a claim chart alleging infringement of the '608 Patent.  Reed denies that it infringes the '608 Patent, and denies the remaining allegations of paragraph 25.

26.    Denied as stated. Reed admits that it sells its products indirectly through distributors. All remaining allegations in Paragraph 26 are denied.

27.    Denied as stated. Reed admits that it assists its customers with purchasing products. All remaining allegations in Paragraph 27 are denied.

28.    Denied.

29.    Denied.

30.    Denied.

31.    Reed admits that Exhibit 2 purports to identify certain products that allegedly infringe the '608 Patent.  Reed denies that it infringes the '608 Patent, and denies the remaining allegations of paragraph 31.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Admitted.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

**RESPONSE TO MPS'S ALLEGATIONS REGARDING
COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,690,608**

40.    Reed adopts, repeats and realleges each and every response previously set forth in paragraphs 1-39 in this Answer as if fully set forth in this paragraph.

41.    Reed lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41.  Accordingly, these allegations are denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.

## RESPONSE TO MPS'S ALLEGATIONS REGARDING DAMAGES

50.   Denied.

## RESPONSE TO MPS'S ALLEGATIONS REGARDING
## DEMAND FOR JURY TRIAL

51.   Paragraph 51 contains allegations to which no response is required.  To the extent a response is required, Reed admits that MPS demands a trial by jury pursuant to Fed. R. Civ. P. 38.

## RESPONSE TO MPS'S PRAYER FOR RELIEF

Reed hereby incorporates its foregoing responses to Paragraphs 1-51 of the Amended Complaint and denies that Plaintiff is entitled to any relief of judgment whatsoever, including from Reed, either as prayed for in the Amended Complaint or otherwise.  Reed respectfully requests judgment dismissing all claims, with an award of its attorneys' fees and costs, and against MPS in all respects.

## DEFENSES

### FIRST DEFENSE
(Failure to State a Cause of Action)

1.   The Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
(Prosecution History Estoppel and/or Prosecution Disclaimer)

2.      Plaintiff's requested relief is barred, in whole or in part, under principles of equity, including without limitation, prosecution history estoppel, waiver, or estoppel.

## THIRD DEFENSE
(Non-Infringement)

3.      Reed does not infringe and has not infringed, literally or by the doctrine of equivalents, any valid and enforceable claim of the '608 Patent, either directly, contributorily, by inducement, jointly, willfully, or in any other manner.

## FOURTH DEFENSE
(Invalidity)

4.      Each asserted claim of the '608 Patent is invalid or unenforceable for failing to comply with one or more of the requirements for patentability under the patent laws of the United States, including but not limited to 35 U.S.C. §§ 102, 103, and 112.

## FIFTH DEFENSE
(Limitations On Damages and Costs)

5.      Plaintiff's requested relief is barred, in whole or in part, under 35 U.S.C. §§ 286-288.

<u>SIXTH DEFENSE</u>
(Lack of Exceptional Case)

6.      Plaintiff cannot prove this is an exceptional case and thus is precluded from seeking recovery of attorneys' fees under 35 U.S.C. § 285.

<u>SEVENTH DEFENSE</u>
(Prosecution History Estoppel)

7.      Because of limitations in the claims of the '608 Patent, statements made in the specifications of the '608 Patent, prior art to the '608 Patent, or proceedings in the U.S. Patent and Trademark Office during prosecution of the applications that led to the issuance of the '608 Patent, Plaintiff is estopped from asserting that claims of the '608 Patent cover any apparatus, device, or product of Reed.

<u>EIGHTH DEFENSE</u>
(Lack of Willful Infringement)

8.      Reed has not willfully infringed and is not willfully infringing the asserted claims of the '608 Patent identified in the Amended Complaint.

<u>NINTH DEFENSE</u>
(Failure to Notice)

9.      Plaintiff's claims for damages predating the filing of this lawsuit are barred or limited to the extent that Plaintiff failed to provide actual or constructive notice as required by 35 U.S.C. § 287 or otherwise.

## TENTH DEFENSE
(Injunction Unavailable)

10.    Plaintiff is not entitled to any injunctive relief as it has, at a minimum, no irreparable injury and has an adequate remedy at law.

## ELEVENTH DEFENSE
(Lack of Knowledge)

11.    To the extent that Plaintiff asserts that Reed indirectly infringed, either by contributory infringement or inducement of infringement, Reed is not liable to Plaintiff for the acts alleged to have been performed before Reed knew that its actions were alleged to constitute indirect infringement.

## TWELFTH DEFENSE
(Unenforceability of U.S. Patent No. 9,590,608 due to Inequitable Conduct)

12.    Reed incorporates by reference and realleges Counterclaim Counts I and III below as though fully set forth herein.

13.    The '608 patent is unenforceable due to MPS's inequitable conduct during prosecution of the '608 patent.

14.    As set forth in more detail below, upon information and belief, during the prosecution of the '608 patent, MPS's Director of Patents, Roland Tso, intentionally withheld from the United States Patent & Trademark Office ("USPTO") information regarding prior art references cited by the China National Intellectual Property Administration ("CNIPA") during prosecution of related applications in China. Specifically, the CNIPA cited numerous references against

10

MPS patent applications in China, CN201210315162 (the "'162CN appl.") (Exhibit 1) and CN201410658580 (the "'580CN appl.") (Exhibit 2) that are material to the patentability of the claims of the '608 patent and were therefore required to be disclosed to the USPTO pursuant to 37 C.F.R. §1.56. At minimum, U.S. 7,026,801 to Fowler ("Fowler") (Exhibit 3), which the CNIPA cited against the '162CN appl., and/or U.S. 7,321,258 to Wong ("Wong") (Exhibit 4), the Chinese counterpart to which the CNIPA cited against both the '162CN appl. and the '580CN appl., when combined with other prior art of record, would have rendered obvious the claims of the '608 patent. If Tso had properly disclosed to the USPTO the Fowler patent and other material prior art cited by the CNIPA, the Examiner would not have allowed the '608 patent claims to issue because they are rendered obvious by at least Fowler and/or Wong in combination with the '162CN appl., or its US counterpart publication, U.S. 20150061611 (the "'611 publ.") (Exhibit 5). On information and belief, this omission was intentional and for the purpose of deceiving the USPTO. But for the omission of this highly relevant prior art, the '608 patent would not have issued.

15.    On information and belief, MPS filed the '162CN appl. in China on August 30, 2012. The '162CN appl. published on December 19, 2012 in China as publication no. 102832810A (the "'810CN publ.") (Exhibit 6) and issued on April 8, 2015 as China patent no. 102832810B (the "'810CN patent") (Exhibit 7). On

August 30, 2013, MPS filed U.S. patent application no. 14/015,964 (the "'964 appl.") which published on March 5, 2015 as the '611 publ., and ultimately issued on April 12, 2016 as U.S. Patent No. 9,312,773 (Exhibit 8). The '964 appl. is the US counterpart to the '162CN appl. On August 27, 2013 the sole inventor of the invention claimed in the '964 appl., Yike Li, executed an assignment transferring ownership of the '964 appl. to MPS. *See* Exhibit 9.

16.     On information and belief, Chengdu Monolithic Power Systems Co. Ltd. ("MPS China") filed patent application no. 201410390708 (the "'708CN appl.") in China on August 11, 2014. On information and belief, MPS China filed the '580CN appl. in China on November 18, 2014 as a divisional of the '708CN appl. The '580CN appl. has the same specification as the '708CN appl. On information and belief, the '708CN appl. never published in China. The '580CN appl. published on April 1, 2015 as China publication no. CN104485806A (the "'806CN publ.") and issued on July 28, 2017 as China patent no. CN104485806B (the "'806CN patent") (Exhibit 10). On August 11, 2015, MPS China filed U.S. patent application no. 14/823,900 (the "'900 appl.") which published on February 11, 2016 and issued as the '608 patent on March 7, 2017. The '900 appl. is the US counterpart to the '708CN appl. The '580CN appl. was not included with the '900 appl. as a priority document and MPS China did not successfully correct priority to include it. The sole inventor

of the invention claimed in the '900 appl., Li Xu, executed an assignment on July 31, 2015, transferring ownership of the '900 appl. to MPS China. *See* Exhibit 11.

17.     On information and belief, Roland Tso was the Director of Patents for MPS and MPS China during the pendency of both the '964 appl. and the '900 appl. and executed a power of attorney that was filed in both the '964 appl. and the '900 appl.

18.     Specifically, Tso executed a blank power of attorney on December 9, 2014 (the "POA") (Exhibit 12). The POA was filed in the '900 appl. on August 19, 2015. The POA was filed in the '964 app. on October 23, 2015.

19.     At the time the POA was filed in the '900 appl., MPS China was the record owner of the '900 Appl.

20.     At the time the POA was filed in the '964 appl., MPS was the record owner of the '964 appl.

21.     Tso is a registered patent attorney in the United States, assigned Registration No. 39,043 from the USPTO. *See* Exhibit 12.

22.     Tso had a general duty of candor and good faith in his dealings with the USPTO. Pursuant to 37 C.F.R. §1.56, an inventor has an affirmative obligation to disclose to the USPTO all information known to be material to the examination of a pending patent application, including "[p]rior art cited in search reports of a foreign patent office in a counterpart application." *See* 37 C.F.R. §1.56(a)(1).

23.     None of the art cited in the '162CN appl. was cited in either the '964 appl. or the '900 appl. None of the art cited in the '580CN appl.—except for the '611 publ., the US counterpart to the '162CN appl.—was cited in the '900 appl. The following references were cited in the '162CN appl.:

| Cited Reference | US Counterparts (if any) |
| --- | --- |
| CN202918193 | N/A |
| CN1905340 ("Wong") | US 7,321,258; US 2007/0024261 |
| CN1914576 | US 6,963,498; US 2005/0168206 |
| US 7,026,801 ("Fowler") | US 2005/0057239 |
| CN101247080 | N/A |
| CN1482730 | US 6,897,643; US 2004/0070383 |

*See* Exhibit 7 at 1 (numeral 56 on face). The following references were cited in the '580CN appl.:

| Cited Reference | US Counterparts (if any) |
| --- | --- |
| CN102832810 (the '810CN publ.) | US 9,312,773; US 2015/0061611 |
| CN204290695 | N/A |
| CN1905340 ("Wong") | US 7,321,258; US 2007/0024261 |
| US 5,627,460 | N/A |
| CN202374178 | N/A |

*See* Exhibit 10 at 1 (numeral 56 on face).

24.     On information and belief, Tso was ultimately responsible for decisions regarding what references to cite in US applications owned by either MPS or MPS

China pursuant to his duties as Director of Patents. Except for an Information Disclosure Statement (IDS) citing the '611 publ. filed on the same date as the '900 appl., neither MPS nor MPS China filed a single IDS during the pendency of either the '964 appl. or the '900 appl.

25.     On information and belief, Tso's decision to file the IDS citing to the '611 publ. with the '900 appl. was based on a belief that the disclosure of the '611 publ. and by extension the '162CN appl. and its publication, the '810CN publ., was material to the patentability of the invention claimed in the '900 appl., and by extension the '608 patent. This is confirmed by the CNIPA's citation, against the '580CN appl., of the '810CN publ. *See* Exhibit 13 (CNIPA Search Report in the '580CN appl. marking the '810CN publ. with an "X"). Exhibit 13 also identifies CN1905340, the Chinese counterpart to Wong. The CNIPA Search Report in the '162CN appl. also cites to the Chinese counterpart to Wong with an "X" and identifies Fowler. *See* Exhibit 14.

26.     The '810 CN publ. is prior art to the '608 patent under 35 U.S.C. §102(a)(1). Because the '810 CN publ. was published more than one year before the effective filing date of the '608 patent, it is not subject to the exceptions under 102(b). Specifically, the '810CN publ. and the '608 patent do not share common inventorship. On information and belief, the disclosure of the '810CN publ. is

identical to that of the '611 publ. *Compare* Exhibit 5 (the '611 publ.) *with* Exhibit 15 (machine translation of the '810CN publ.).

27.     On information and belief, the '611 publ. itself is also prior art to the '608 patent under 35 U.S.C. §102(a)(2). It is again not subject to the exceptions under 102(b). Specifically, the '611 publ. and the '608 patent do not share common inventorship and, as of the effective filing date of the '608 patent, did not share common ownership.

28.     On information and belief, Tso intentionally chooses to not file foreign cited art in any US MPS applications, regardless of the materiality of the references. The most plausible inference to be drawn from this intentional choice is based on a specific intent to deceive the USPTO.

29.     On information and belief, the '810CN publ. and the '611 publ. disclose all limitations of claim 1 of the '608 patent except for "wherein when the first comparing signal has the first logic state, the bootstrap refresh module is configured to decrease the output voltage of the voltage converter." *See*, *e.g.* '611 publ., Exhibit 5, at ¶¶[0046], [0048], [0054]-[0055], [0057], Fig. 3, and Claims 1-2; '810CN publ. Exhibit 6, at Fig. 3; Translation of '810CN publ., Exhibit 15, at 9-12, 16. This element is disclosed in Fowler (cited by the CNIPA against the '162CN appl.), Exhibit 3, at least, at 2:20-31, 3:4-8, and Fig. 2. This element is also disclosed in Wong (cited by the CNIPA against both the '162CN appl. and the '580CN appl.),

Exhibit 4, at least, at 5:3-14. Thus, Fowler and/or Wong "establishes, … in combination with [the '810CN publ. and/or the '611 publ.], a prima facie case of unpatentability" of claim 1 of the '608 patent. 37 C.F.R. §1.56(b)(1). On information and belief, neither Fowler or Wong are cumulative of the prior art cited in the '608 patent, at least because Fowler and Wong each discloses at least one element missing from the only reference cited by MPS during prosecution of the '608 patent. Fowler and Wong are both therefore material to the patentability of the claims of the '608 patent and the decision to omit it from citation in the '608 patent deceived the USPTO.

30.    The inference of intent to deceive is supported by the clear materiality of, at least, Fowler and/or Wong in combination with the disclosure of the '810CN publ. and/or the '611 publ. As noted previously, the only reference cited by Tso in the '608 patent was the '611 publ. At minimum, Tso was obligated to inquire as to the materiality of any art cited in the '611 publ. or its counterparts. *See* 37 C.F.R. §1.56(a)(1). He did not. His decision to not cite any of the art cited by the CNIPA was made with a specific intent to deceive the USPTO and but for not being made aware of the art, including Fowler and Wong, the Examiner would not have allowed the claims of the '608 patent.

<u>THIRTEENTH DEFENSE</u>
(Right to Assert Additional Defenses)

31.     By pleading these defenses, Reed does not in any way agree or concede that Reed has the burden of proof or persuasion on any of these issues.  Reed reserves the right to assert additional defenses, including those listed in Fed. R. Civ. P. 8(c), which may be learned during discovery and further factual investigation in this case.

## **<u>COUNTERCLAIMS</u>**

### **THE PARTIES**

1.     Counterclaimant Reed Semiconductor Corp. ("Reed") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 875 Centerville Road, Warwick, RI, 02886.

2.     Upon information and belief, Counterclaim Defendant Monolithic Power Systems, Inc. ("MPS") is a corporation organized and existing under the laws of Delaware, having its principal place of business at 5808 Lake Washington Boulevard NE, Kirkland, WA 98033.

### **JURISDICTION AND VENUE**

3.     These Counterclaims arise under the patent laws of the United States, 35 U.S.C. §101 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§2201-2202. This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§1331, 1338, 2201, and 2202.

4.     This Court has personal jurisdiction over MPS, and venue is proper in this Judicial District, because MPS is incorporated in Delaware and has invoked the jurisdiction of this Court by filing its Amended Complaint in this Court.

**Count I: Declaration of Invalidity of the '608 Patent**

5.     Reed incorporates by reference the preceding paragraphs of these Counterclaims and the Twelfth Affirmative Defense above as though fully set forth herein.

6.     This Counterclaim is for declaratory relief pursuant to 28 U.S.C. §§2201-2202, and seeks a declaration under the patent laws of the United States that the asserted claim(s) of the '608 Patent are invalid.  This Counterclaim relates directly to claims asserted by MPS in the Amended Complaint.  MPS asserts that the '608 patent is valid and enforceable. (*see* Amended Complaint, at ¶14).  Reed contends that the asserted claims(s) of the '608 Patent are invalid.  Therefore, an actual controversy exists between the parties under Article III of the United States Constitution.

7.     The asserted claim(s) of the '608 Patent are invalid under 35 U.S.C. §§101, 102, 103 and/or 112.

8.     On information and belief, one or more products that include each and every limitation of at least claim 1 of the '608 Patent were on the market, sold to and used by consumers, and publicly disclosed in the United States prior to the effective

filing date of the '608 Patent, and were on sale more than one year prior to the earliest effective priority date of the '608 Patent.

9.     On information and belief, one or more patents or other printed publications disclosed each and every limitation of at least claim 1 of the '608 Patent prior to the earliest effective priority date of the '608 Patent.

10.     For example, U.S. Patent Nos. 7,026,801; 7,145,316; and 9,350,241, alone or in combination with each other and/or other prior art publications and products, anticipate or render obvious at least claim 1 of the '608 Patent.

11.     On information and belief, a person of ordinary skill in the art would have been motivated to combine one or more of the prior art products and/or one or more prior art references to achieve the asserted claim(s) of the '608 Patent.

## Count II: Declaration of Non-Infringement of the '608 Patent

12.     Reed incorporates by reference the preceding paragraphs of these Counterclaims as though fully set forth herein.

13.     Reed designs semiconductor chips for use in power converters.

14.     Reed's products do not infringe any of the claims of the '608 Patent because they lack one or more required limitations of the claims, either literally or under the doctrine of equivalents, including but not limited to the bootstrap refresh module as claimed in the '608 Patent. Specifically, Reed products do not include a bootstrap refresh module as claimed in all independent claims of the '608 Patent.

**Count III: Declaration of Unenforceability of the '608 Patent due to Inequitable Conduct**

15.    Reed incorporates by reference the preceding paragraphs of these Counterclaims and the Twelfth Affirmative Defense as though fully set forth herein.

16.    The '608 patent is unenforceable due to MPS's inequitable conduct during prosecution of the '608 patent.

17.    As set forth in more detail below, upon information and belief, during the prosecution of the '608 patent, MPS's Director of Patents, Roland Tso, intentionally withheld from the United States Patent & Trademark Office ("USPTO") information regarding prior art references cited by the China National Intellectual Property Administration ("CNIPA") during prosecution of related applications in China. Specifically, the CNIPA cited numerous references against MPS patent applications in China, CN201210315162 (the "'162CN appl.") (Exhibit 1) and CN201410658580 (the "'580CN appl.") (Exhibit 2) that are material to the patentability of the claims of the '608 patent and were therefore required to be disclosed to the USPTO pursuant to 37 C.F.R. §1.56. At minimum, U.S. 7,026,801 to Fowler ("Fowler") (Exhibit 3), which the CNIPA cited against the '162CN appl., and/or U.S. 7,321,258 to Wong ("Wong") (Exhibit 4), the Chinese counterpart to which the CNIPA cited against both the '162CN appl. and the '580CN appl., when combined with other prior art of record would have rendered obvious the claims of the '608 patent. If Tso had properly disclosed to the USPTO the Fowler patent and

21

other material prior art cited by the CNIPA, the Examiner would not have allowed the '608 patent claims to issue because they are rendered obvious by at least Fowler and/or Wong in combination with the '162CN appl., or its US counterpart publication, U.S. 20150061611 (the "'611 publ.") (Exhibit 5). On information and belief, this omission was intentional and for the purpose of deceiving the USPTO. But for the omission of this highly relevant prior art, the '608 patent would not have issued.

18.    On information and belief, MPS filed the '162CN appl. in China on August 30, 2012. The '162CN appl. published on December 19, 2012 in China as publication no. 102832810A (the "'810CN publ.") (Exhibit 6) and issued on April 8, 2015 as China patent no. 102832810B (Exhibit 7). On August 30, 2013, MPS filed U.S. patent application no. 14/015,964 (the "'964 appl.") which published on March 5, 2015 as the '611 publ., and ultimately issued on April 12, 2016 as U.S. Patent No. 9,312,773 (Exhibit 8). The '964 appl. is the US counterpart to the '162CN appl. On August 27, 2013 the sole inventor of the invention claimed in the '964 appl., Yike Li, executed an assignment transferring ownership of the '964 appl. to MPS. *See* Exhibit 9.

19.    On information and belief, Chengdu Monolithic Power Systems Co. Ltd. ("MPS China") filed patent application no. 201410390708 (the "'708CN appl.) in China on August 11, 2014. On information and belief, MPS China filed the

'580CN appl. in China on November 18, 2014 as a divisional of the '708CN appl. On information and belief, the '708CN appl. never published in China. The '580CN appl. published on April 1, 2015 as China publication no CN104485806A and issued on July 28, 2017 as China patent no. CN104485806B (Exhibit 10). On August 11, 2015, MPS China filed U.S. patent application no. 14/823,900 (the "'900 appl.") which published on February 11, 2016 and issued as the '608 patent on March 7, 2017. The '900 appl. is the US counterpart to the '708CN appl. The '580CN appl. was not included with the '900 appl. as a priority document and MPS China did not successfully correct priority to include it. The sole inventor of the invention claimed in the '900 appl., Li Xu, executed an assignment on July 31, 2015, transferring ownership of the '900 appl. to MPS China. *See* Exhibit 11.

20.    On information and belief, Roland Tso was the Director of Patents for MPS and MPS China during the pendency of both the '964 appl. and the '900 appl. and executed a power of attorney that was filed in both the '964 appl. and the '900 appl.

21.    Specifically, Tso executed a blank power of attorney on December 9, 2014 (the "POA") (Exhibit 12). The POA was filed in the '900 appl. on August 19, 2015. The POA was filed in the '964 app. On October 23, 2015.

22.    At the time the POA was filed in the '900 appl., MPS China was the record owner of the '900 Appl.

23

23.     At the time the POA was filed in the '964 appl., MPS was the record owner of the '964 appl.

24.     Tso is a registered patent attorney, assigned Registration No. 39,043 from the USPTO. *See* Exhibit 12.

25.     Tso had a general duty of candor and good faith in his dealings with the USPTO. Pursuant to 37 C.F.R. §1.56, an inventor has an affirmative obligation to disclose to the USPTO all information known to be material to the examination of a pending patent application, including "[p]rior art cited in search reports of a foreign patent office in a counterpart application." *See* 37 C.F.R. §1.56(a)(1).

26.     None of the art cited in the '162CN appl. was cited in either the '964 appl. or the '900 appl. None of the art cited in the '580CN appl.—except for the '611 publ., the US counterpart to the '162CN appl.—was cited in the '900 appl. The following references were cited in the '162CN appl.:

| Cited Reference | US Counterparts (if any) |
|---|---|
| CN202918193 | N/A |
| CN1905340 ("Wong") | US 7,321,258; US 2007/0024261 |
| CN1914576 | US 6,963,498; US 2005/0168206 |
| US 7,026,801 ("Fowler") | US 2005/0057239 |
| CN101247080 | N/A |
| CN1482730 | US 6,897,643; US 2004/0070383 |

*See* Exhibit 7 at 1 (numeral 56 on face). The following references were cited in the

'580CN appl.:

| Cited Reference | US Counterparts (if any) |
|---|---|
| CN102832810 (the '810CN publ.) | US 9,312,773; US 2015/0061611 |
| CN204290695 | N/A |
| CN1905340 ("Wong") | US 7,321,258; US 2007/0024261 |
| US 5,627,460 | N/A |
| CN202374178 | N/A |

*See* Exhibit 10 at 1 (numeral 56 on face).

27.     On information and belief, Tso was ultimately responsible for decisions

regarding what references to cite in US applications owned by either MPS or MPS

China pursuant to his duties as Director of Patents. Except for an Information

Disclosure Statement (IDS) citing the '611 publ. filed on the same date as the '900

appl., neither MPS nor MPS China filed a single IDS during the pendency of either

the '964 appl. or the '900 appl.

28.     On information and belief, Tso's decision to file the IDS citing to the

'611 publ. with the '900 appl. was based on a belief that the disclosure of the '611

publ. and by extension the '162CN appl. and its publication, the '810CN publ., was

material to the patentability of the invention claimed in the '900 application, and by

extension the '608 patent. This is confirmed by the CNIPA's citation, against the

'580CN appl., of the '810CN publ. *See* Exhibit 13 (CNIPA Search Report in the

'580CN appl. marking the '810CN publ. with an "X"). Exhibit 13 also identifies
CN1905340, the Chinese counterpart to Wong. The CNIPA Search Report in the
'162CN appl. also cites to the Chinese counterpart to Wong with an "X" and
identifies Fowler. *See* Exhibit 14.

29.     The '810 CN publ. is prior art to the '608 patent under 35 U.S.C.
§102(a)(1). Because the '810 CN publ. was published more than one year before the
effective filing date of the '608 patent, it is not subject to the exceptions under
102(b). Specifically, the '810CN publ. and the '608 patent do not share common
inventorship. On information and belief, the disclosure of the '810CN publ. is
identical to that of the '611 publ. *Compare* Exhibit 5 (the '611 publ.) *with* Exhibit
15 (machine translation of the '810CN publ.).

30.     On information and belief, the '611 publ. itself is also prior art to the
'608 patent under 35 U.S.C. §102(a)(2). It is again not subject to the exceptions
under 102(b). Specifically, the '611 publ. and the '608 patent do not share common
inventorship and, as of the effective filing date of the '608 patent, did not share
common ownership.

31.     On information and belief, Tso intentionally chooses to not file foreign
cited art in any US MPS applications, regardless of the materiality of the references.
The most plausible inference to be drawn from this intentional choice is based on a
specific intent to deceive the USPTO.

32.   On information and belief, the '810CN publ. and the '611 publ. disclose all limitations of claim 1 of the '608 patent except for "wherein when the first comparing signal has the first logic state, the bootstrap refresh module is configured to decrease the output voltage of the voltage converter." *See*, *e.g.* '611 publ., Exhibit 5, at ¶¶[0046], [0048], [0054]-[0055], [0057], Fig. 3, and Claims 1-2; '810CN publ. Exhibit 6, at Fig. 3; Translation of '810CN publ., Exhibit 15, at 9-12, 16. This element is disclosed in Fowler (cited by the CNIPA against the '162CN appl.), Exhibit 3, at least, at 2:20-31, 3:4-8, and Fig. 2. This element is also disclosed in Wong (cited by the CNIPA against both the '162CN appl. and the '580CN appl.), Exhibit 4, at least, at 5:3-14. Thus, Fowler and/or Wong "establishes, … in combination with [the '810CN publ. and/or the '611 publ.], a prima facie case of unpatentability" of claim 1 of the '608 patent. 37 C.F.R. §1.56(b)(1). On information and belief, neither Fowler or Wong are cumulative of the prior art cited in the '608 patent, at least because Fowler and Wong each discloses at least one element missing from the only reference cited by MPS during prosecution of the '608 patent. Fowler and Wong are both therefore material to the patentability of the claims of the '608 patent and the decision to omit it from citation in in the '608 patent deceived the USPTO.

33.   The inference of intent to deceive is supported by the clear materiality of, at least, Fowler and/or Wong in combination with the disclosure of the '810CN

publ. and/or the '611 publ. As noted previously, the only reference cited by Tso in the '608 patent was the '611 publ. At minimum, Tso was obligated to inquire as to the materiality of any art cited in the '611 publ. or its counterparts. *See* 37 C.F.R. §1.56(a)(1). He did not. His decision to not cite any of the art cited by the CNIPA was made with a specific intent to deceive the USPTO and but for not being made aware of the art, including Fowler and Wong, the Examiner would not have allowed the claims of the '608 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Reed respectfully prays the Court grant the following relief:

(1)     That judgment be entered in favor of Reed;

(2)     That this Court enter an Order declaring that the asserted claim(s) of the '608 Patent is or are invalid;

(3)     That this Court enter an Order declaring that the asserted claim(s) of the '608 Patent is or are not infringed by Reed's products;

(4)     That this Court declare this to be an exceptional case under 35 U.S.C. § 285;

(5)     That this Court award Reed its costs in this action, together with reasonable attorneys' fees and pre-judgment and post-judgment interest; and

(6)     That this Court grant Reed such other and further relief as it deems just and proper.

28

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant Reed

Semiconductor Corp. demands a trial by jury as to all issues so triable.

Date: December 28, 2023                     Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Austen C. Endersby*
Austen C. Endersby (No. 5161)
919 N. Market Street, Suite 300
Wilmington, DE 19801
                    - and -
2020 K Street, Suite 500
Washington, DC 20006
Tel.: (202) 461-3100
Email: aendersby@foxrothschild.com

*Of counsel:*

Ryan N. Miller (*pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel.: (215) 299-2000
Email: rmiller@foxrothschild.com

*Attorneys for Defendant and*
*Counterclaimant Reed Semiconductor,*
*Inc.*