# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> REED SEMICONDUCTOR CORP., <br><br> Defendant. | Civil Action No. 23-1155-JFM <br><br> Date: January 26, 2024 <br> Time: 12:30 pm <br> Judge: The Honorable John F. Murphy |

## JOINT RULE 26(f) REPORT

Pursuant to Rule 26(f) and Judge Murphy's policies and procedures, the parties have thoroughly discussed a discovery plan and provide the following report:

**I.     Counsel**

    A.     Lead counsel for plaintiff(s):     John P. Schnurer

    B.     Lead counsel for defendant(s):     Ryan N. Miller

    C.     All counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):

        John P. Schnurer
        John D. Esterhay
        Miguel Bombach
        John G. Day

    D.     All counsel who participated in Rule 26(f) conference on behalf of Defendant(s):

        Ryan N. Miller
        Austen C. Endersby

    NOTE: Per Judge Murphy's policies and procedures, lead counsel for a case **must** participate in the Rule 26(f) conference.

**II.     Description of claims and defenses**

    <u>By Plaintiff:</u>

Plaintiff Monolithic Power Systems, Inc. ("MPS") brings this action against Defendant Reed Semiconductor Corp. ("Reed") in connection with Reed's commercially available products, directly and indirectly infringing, and continuing to infringe, one or more claims of MPS's asserted United States Patent No. 9,590,608 ("the '608 Patent") under 35 U.S.C. § 271.

MPS's '608 Patent describes a voltage converter with a bootstrap refresh control circuit monitoring the bootstrap voltage across the bootstrap capacitor and providing a high side driving signal to the high side which of the voltage converter. Further, the bootstrap refresh control circuit can also control the charging of the bootstrap, thus preventing the converter from running in an abnormal condition because of the bootstrap voltage dropping.

Reed has directly and indirectly infringed, and continues to infringe, one or more claims of the MPS Patent through making, using, offering for sale, and/or selling in the United States and/or importing into the United States, products and systems that infringe upon the MPS Patent (i.e., the Reed Accused Products), and inducing others to do the same, including Reed's downstream customers.

"Reed Accused Products" are step-down converter products accused of meeting the claim limitations of the MPS Patent. Reed designs and manufactures power converters that infringe the MPS Patent in the United States. The infringing converters have applications in many types of devices designed and manufactured by Reed's customers, including various electronic devices. The "Reed Accused Products" also include evaluation boards that have Reed step-down converter products implemented by Reed on a systems-level board in combination with other necessary electronic components, that Reed makes, uses, offers for sale, sells and/or imports to its customers in the United States, for their evaluation of Reed's step-down converter products, as part of the design-in process.

By Defendant:

At bottom, Reed does not infringe the '608 patent, and in any event the asserted claims are invalid. The bootstrap functions present in Reed's accused products are fundamentally different from those claimed in the '608 patent and therefore do not infringe any patent rights asserted by Plaintiff. To the extent Reed products include bootstrap components and functions that Plaintiff alleges infringe the '608 patent, they are utilizing components and methods that have been in use in the electronics industry, and in the manufacture of power converters in particular, for nearly 20 years, long prior to the effective filing date of the '608 patent.

In addition, the '608 patent is unenforceable due to MPS's inequitable conduct. Specifically, during the prosecution of the '608 patent, individuals and agents of MPS failed to disclose any of the references cited by the China National Intellectual Property Administration during prosecution of counterpart applications in China. These references were material to the patentability of the '608 patent's claims because, but for the USPTO not being aware of these references, the '608 patent would not have been issued. Many of these references described the established technology mentioned above that Reed followed in producing its products, further illustrating the unpatentability of the claims of the '608 patent.

### III. Stipulated facts and insurance coverage and deductibles

The Parties agree that the following facts are not in dispute:

- Plaintiff is asserting a claim for patent infringement of United States Patent No. 9,590,608 ("the '608 Patent").

- Reed is a corporation organized under the law of Delaware with its principal place of business at 875 Centerville Road, Warwick, RI, 02886.

- The '608 Patent issued on March 7, 2017, from a Patent Application filed on August 11, 2015, which claims priority from Chinese Patent Application, No. 201410390708.2, filed on August 11, 2014.

- Reed is not currently licensed to practice '608 Patent.

- Reed designs power converters.

- Reed sells its products indirectly through distributors.

- Reed assists its customers with purchasing its products.

- On November 1, 2023, with filing of MPS's first amended Complaint, Reed, at least, had knowledge of the MPS Patent.

- The sole inventor of the '608 patent is Li Xu.

- Roland Tso signed a Power of Attorney filed with the USPTO during the prosecution of the '608 Patent.

- Mr. Tso is a registered U.S. Patent Attorney.

- The U.S. Pat. Pub. No. 2015/0061611 was submitted in an Information Disclosure Statement on August 11, 2015 in U.S. App. No. 14/823,900.

- Chinese Patent CN104485806B lists CN 102832810, CN 204290695, CN 1905340, US 5627460, and CN 202374178 on its face, which are not listed on the face of the '608 Patent.

- Chinese Patent Publication 102832810B lists CN 202918193, CN 1905340, CN 1914576, US 7026801, CN 101247080, and CN 1482730 on its face, which are not listed on the face of U.S. Patent No. 9,312,773.

Neither MPS nor Reed is aware of any insurance agreement or policy that will be applicable to this case.

IV. **Anticipated scope of discovery**

    A.    Summarize with specificity those issues on which the parties will need to conduct discovery. Identify categories of information each party needs in discovery and why.

<u>The Parties anticipate that discovery will be necessary into the factual underpinnings of MPS's claims of patent infringement and whether and in what amount MPS suffered damages as a result of Reed's alleged actions.</u>

<u>MPS anticipates it will seek the following discovery from Reed:</u>

- Discovery, including electronically stored information such as communications, regarding the design, manufacture, marketing, and sale of the Reed Accused Products

- Discovery, including electronically stored information such as communications, into Reed's knowledge of the Asserted Patent.

- Personnel files of Reed employees with previous record of employment with MPS.

- Discovery, including electronically stored information such as communications, into Reed's inducement of downstream customers to incorporate Reed Accused Products into downstream products.

- Discovery into financial, market, and other information relevant to MPS's claims for damages.

- Documents that document or relate in any way to claims asserted by MPS.

- Any and all documents referring or relating to the claims or defenses in this action.

Reed anticipates it will seek the following discovery from MPS:

- Discovery, including electronically stored information such as communications, regarding the conception, reduction to practice (constructive and/or actual), and prosecution of applications describing and claim the invention of the '608 patent.

- Discovery, including electronically stored information such as communications, into MPS's knowledge of the prior art publications and products.

- Discovery regarding MPS's allegations of infringement, including any pre-filing investigation.

- Documents that document or relate in any way to claims asserted by Reed.

- Any and all documents referring or relating to the claims or defenses in this action.

B. Anticipated number of interrogatories per party:

Plaintiff: ____25_____

Defendant: ___25_____

C. Anticipated number of depositions per party:

Plaintiff: _____10 (excluding expert depositions)_____

Defendant: ____10 (excluding expert depositions)_____

D. Do the parties anticipate the need for any agreements on remote deposition protocols?

<u>Uncertain at this time, but the Parties will work together, in good faith, regarding remote deposition scheduling, when necessary.</u>

E. To the extent either party proposes to exceed the presumptive limits in the Federal Rules for discovery, explain the basis for that proposal.

<u>No proposal at this time, however, MPS and Reed, respectively, reserve the right to request additional depositions in the event such additional depositions become necessary.</u>

F. Do the parties anticipate the need for a Fed. R. Evid. 502(d) order?

<u>The Parties anticipate including a Rule 502(d) order with a stipulated Protective Order regarding discovery of confidential material.</u>

G. Do the parties anticipate the need for any third-party discovery? If so, identify the likely third parties and the discovery to be sought.

<u>Yes. MPS anticipates third-party discovery into at least Reed's downstream distributors and customers regarding their incorporation of Reed Accused Products into their own products, and their importation and sale of such products.</u>

<u>Reed may take third party discovery of companies that made/used prior art devices and products.</u>

<blockquote>
Reed does not believe third party discovery of alleged direct infringers of the '608 patent (such as, e.g., Reed's customers) is necessary, particularly given that MPS has not adequately explained its basis for seeking third party discovery regarding indirect infringement. To the extent MPS alleges Reed directly infringes the '608 patent, MPS cannot seek double damages for the same infringement and information belonging to Reed's customers regarding any incorporation of such allegedly infringing Reed product is irrelevant to this case. Until MPS has sufficiently alleged through detailed infringement contentions that a Reed product which does not itself directly infringe the '608 patent is incorporated into one or more products of Reed's customers which does or do directly infringe the '608 patent, such third-party discovery is irrelevant to any issue in the case and MPS should be precluded from seeking any third-party discovery until MPS has made such disclosures.
</blockquote>

H.  Do the parties anticipate the need for experts? If so, identify the subjects on which the expert(s) may opine. Be sure to point out whether defendant(s) will be advancing experts on affirmative issues, or only in response to plaintiff(s) experts. State whether expert depositions will be taken, and if so, an agreement or positions on how many will be required.

> Yes. The parties anticipate expert testimony on infringement, invalidity, and damages issues. MPS will advance experts on infringement and damages and will respond to Reed's expert(s) on invalidity and inequitable conduct. Reed will advance expert(s) on invalidity and inequitable conduct and will respond to MPS's experts on infringement and damages. Expert depositions will be taken, with one deposition per expert report. These depositions will not count against the limit of fact depositions per side, as noted above.

    I.      Does the plaintiff expect to request attorneys' fees as a prevailing party, either pursuant to a contract or a statute? If so, state the basis for the expected request.

<u>MPS and Reed, respectively, reserve the right to seek attorneys' fees for an exceptional case under 35 U.S.C. § 285</u>.

    J.      Has each party provided written notice to the client of the obligation to preserve all relevant material, including electronic records?

Plaintiff: <u>   Yes      </u>

Defendant: <u>   Yes      </u>

## V.   Status of discovery

The parties must summarize the status of discovery so far. If discovery has not progressed, the parties should explain why. In general, Judge Murphy expects the parties to begin discovery prior to the Rule 16 conference.

<u>Initial disclosures were served on January 12, 2024.</u>

<u>Also on January 12, 2024, Reed served on MPS a first set of discovery requests, including its First Set of Interrogatories 1-9 and its First set of Requests for Production 1-64.</u>

<u>Also on January 19, 2024, MPS served on Reed first sets of interrogatories and requests for production.</u>

## VI.   Proposed case management deadlines

    A.      Rule 26(a)(1) initial disclosures were exchanged: <u>  January 12, 2024  </u>

    B.      Deadline to amend pleadings to add claims or parties (must be as early as practicable to avoid prejudice or unnecessary delays): <u>  April 19, 2024  </u>

    C.      Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any):

<u>  January 10, 2025  </u>

    D.      Deadline for rebuttal expert reports (if any): <u>  February 7, 2025  </u>

  E. Deadline(s) to complete fact discovery:  <u>December 6, 2024</u>

  F. Provide an explanation for the position of the parties on whether expert discovery will run concurrently with fact discovery or be sequenced after fact discovery.

<u>The parties propose that expert discovery will run sequentially after fact discovery.  The parties propose that expert discovery closes on March 7, 2025, to give enough time for expert depositions to occur.  Pursuant to the Court's December 22, 2023 Order (ECF No. 16) at footnote 2 requesting "a schedule that is appropriate for patent cases and generally consistent with the model patent scheduling orders of the Delaware District Judges," the parties have agreed to other patent-related deadlines generally following the form scheduling order of Judge Richard G. Andrews as set forth in the enclosed Joint Proposed Scheduling Order.</u>

  G. If any party seeks more than 120 days for discovery, explain why.

<u>This is a complex patent infringement case.  The parties anticipate that fact discovery will take some time, and therefore have proposed the dates noted above.</u>

  H. Deadline to file motion for summary judgment: <u>March 21, 2025</u>

**VII.** **Electronic discovery**

<u>The Parties anticipate electronically stored information to be discovered in accordance with the District of Delaware Default Standard For Discovery, Including Discovery of ESI.</u>

<u>The Parties anticipate making a proposal for an electronically stored information order and will work together in good faith toward proposing such an order to the Court.</u>

**VIII.  Protective orders and confidentiality agreements**

The Parties anticipate making a proposal for a protective order to protect highly sensitive design and financial information, including a Rule 502(d) Order.  The Parties will work together in good faith toward proposing such an order to the Court.

**IX.  Alternative dispute resolution**

A. Have the parties engaged in any settlement discussions?  If so, set forth the status of those negotiations.  If not, explain why not.

The parties have not yet engaged in settlement discussions.  MPS is not yet in a position to make a settlement demand without further discovery into financial information related to Reed's sale of the Reed Accused Products.

B. Have the parties explored or considered other forms of alternative dispute resolution?  If so, summarize those efforts.  If not, state the parties' positions with respect to ADR, as required under Local Rule 53.3.

Given the stage of the case, the Parties have not yet considered other forms of alternative dispute resolution but expect to revisit this issue at the appropriate time.

C. Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

    John P. Schnurer for Plaintiff MPS

    Ryan N. Miller for Defendant Reed

X.  **Consent to send case to a Magistrate Judge**

   The Parties do not consent to have a United States Magistrate Judge conduct any or all proceedings in this case, pursuant to 28 U.S.C. § 636(c).

XI.  **Service by electronic means**

   The Parties consent to service of pleadings and discovery via email pursuant to Fed. R. Civ. P. 5(b)(2)(E).

XII.  **Policies and procedures**

   Judge Murphy's policies and procedures are available for the parties to review on the Court's website. By signing below, counsel for each party and/or each pro se party represents that he or she has reviewed the Judge's policies and procedures and acknowledges the requirements contained therein.  The parties and their counsel further acknowledge by signing below that Judge Murphy may strike pleadings and other submissions that do not comply with his policies and procedures.

XIII.  **Other matters**

   The Parties have not identified any other matters requiring the Court's attention at this time.

Dated: January 19, 2024

**ASHBY & GEDDES**

/s/ *John G. Day*

*Of Counsel*:

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

John P. Schnurer
John D. Esterhay
Miguel J. Bombach
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
(858) 720-5700

*Attorneys for Plaintiff*
*Monolithic Power Systems, Inc.*

Dated: January 19, 2024

**FOX ROTHSCHILD LLP**

/s/ *Austen C. Endersby*

*Of Counsel:*

Austen C. Endersby (No. 5161)
919 N. Market Street, Suite 300
Wilmington, DE 19801
    - and -
2020 K Street, Suite 500
Washington, DC 20006
Tel.: (202) 461-3100
Email: aendersby@foxrothschild.com

Ryan N. Miller (pro hac vice)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel.: (215) 299-2000
Email: rmiller@foxrothschild.com

*Attorneys for Defendant*
*Reed Semiconductor, Inc.*