IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONOLITHIC POWER SYSTEMS, INC., | ) | ▮ |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 23-1155-JFM |
| REED SEMICONDUCTOR CORP., | ) | **REDACTED PUBLIC VERSION** |
| Defendant. | ) | |

## MONOLITHIC POWER SYSTEMS, INC.'S MOTION TO COMPEL DISCOVERY

*Of Counsel:*

John P. Schnurer
John D. Esterhay
Miguel J. Bombach
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
(858) 720-5700

W. Matthew Pierce
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO 80202
(303) 291-2300

Dated: May 21, 2024

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

{02017854;v1 }

**TABLE OF CONTENTS**

**Page**

I. MPS's Requests and Reed's Responses ........................................................................ 2

II. Legal Standard .............................................................................................................. 4

III. Argument ...................................................................................................................... 5

    A. Nengda Is Relevant to Both Inducement and Direct Infringement ..................... 5

    B. Reed's Responses to Interrogatory Responses 4 and 14 Are Incomplete Regarding Nengda and Should Be Supplemented ........................... 9

    C. Reed Has Entirely Refused to Produce Documents Regarding Nengda and Should Be Compelled to Produce ................................................. 10

CONCLUSION ....................................................................................................................... 11

Table of Authorities

PAGE(S)

**CASES**

*Applications in Internet Time, LLC v. RPX Corp.*,
   897 F.3d 1336 (Fed. Cir. 2018)......................................................................................8

*Cash Today of Texas, Inc. v. Greenberg*,
   No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138 (D. Del. Oct. 23, 2002)................5

*CP Kelco U.S. Inc. v. Pharmacia Corp.*,
   213 F.R.D. 176 (D. Del. 2003) .................................................................................4, 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   900 F. Supp. 2d 1160 (D. Nev. 2012)..........................................................................8

*Int'l Bus. Machines Corp. v. Zynga Inc.*,
   No. CV 22-590-GBW, 2024 WL 245736 (D. Del. Jan. 19, 2024) ..............................4

*Lannett Co., Inc. v. KV Pharms., Drugtech Corp.*,
   No. CV 08-338-JJF, 2009 WL 10737502 (D. Del. Mar. 6, 2009)...............................4

*nCube Corp. v. Seachange Intern., Inc.*,
   436 F.3d 1317 (Fed. Cir. 2006)....................................................................................7

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988)......................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26............................................................................................................4

Fed. R. Civ. P. 37(a) ...................................................................................................1, 4

Monolithic Power Systems, Inc. ("MPS" or "Plaintiff") respectfully moves under Federal Rule of Civil Procedure 37(a) for an order compelling Defendant Reed Semiconductor Corp. ("Reed" or "Defendant") to provide reasonably precises, complete, and detailed responses to Interrogatories Nos. 4 and 14 and to produce documents and things in response to Requests for Production Nos. 20, 21, 35, and 36.

These discovery requests concern Reed's relationship and cooperation with its Chinese affiliate Nengda Microelectronics (and at least one other related entity, Nengda Semiconductor, collectively "Nengda") around the design, sale, and marketing of accused products.  MPS has sued the Nengda entities (regarding infringement of the same patent by the same products) in a separate case before this Court, Number 24-166, and this Court has scheduled a joint hearing for all motions and scheduling issues in both cases (and a third, related case against Reed) for June 18, 2024.

Aside from one incomplete interrogatory response, Reed refuses to respond or produce its information and documents related to Nengda on grounds of relevance and proportionality, but the information MPS seeks bears heavily on MPS's patent-infringement allegations against Reed.  Nengda sells at least four of the exact same products that Reed sells, which MPS accuses of infringement, with the same names, marketing content, schematics, and supporting Reed patents.  Further, Reed admits that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Either Nengda is selling accused Reed products, Reed is selling accused Nengda products, or the two entities have somehow collaborated on at least design and marketing of the infringing products.  Regardless, Nengda's affiliation and cooperation with Reed is relevant to at least Reed's inducement of infringement by Nengda (and entities further

downstream from Nengda) and related damages, if not Nengda's participation in direct infringement by Reed.

MPS requests that the Court compel Reed to supplement its responses to Interrogatory Nos. 4 and 14 and produce documents in response to Requests for Production Nos. 20, 21, 35, and 36.

## I.  MPS'S REQUESTS AND REED'S RESPONSES

On January 19, 2024, MPS served Reed its First Set of Interrogatories (Ex. 1) and its First Set of Requests for Production (Ex. 2) (herein after, "First Set of Discovery Requests"). Reed responded on February 20 and supplemented its responses on April 19 (Exs. 3, 4).

Interrogatory No. 4 seeks Reed's interests in Nengda, including its role in founding Nengda, the nature and timing of their relationship, their respective design/development roles for the accused products, and Nengda's sales of Reed products:

> **Interrogatory No. 4:** Explain in detail the interests You have in Nengda, including without limitation the: (i) the role of Reed in the founding of Nengda, (ii) identification of Your current and former employees that had a role in the founding of Nengda, (iii) the date that Reed commenced into a relationship with Nengda, (iv) the type of relationship Reed has with Nengda and the current status of this relationship; (v) the roles of Reed and Nengda in decisionmaking related to the development of step-down converter technology, and (vi) the details and circumstances by which Nengda sells Reed products.

(Ex. 1 at 9.)

Interrogatory No. 14 requests information on Reed employees that worked for or with Nengda relating to accused products:

> **Interrogatory No. 14:** Identify with particularity the relationship of current and former Reed employees—that worked on the design and/or development of any Accused Product—with Nengda, including without limitation the the name and job title of each employee, the date(s) that each employee's relationship started

> with Nengda, and a description of the nature of work each employee executed for Nengda.

(Ex. 1 at 12.)

Similar to Interrogatories No. 4 and 14, Requests for Production Nos. 20, 21, 35, and 36 seek Reed's communications with Nengda, agreements with Nengda, and documents referencing Nengda, relating to the accused products or this litigation (Ex. 2 at 10, 12):

> **Request for Production No. 20:** All communications between Reed and Nengda concerning this litigation.
>
> **Request for Production No. 21:** All communications between Reed and Nengda concerning the development, manufacturing, sales, and distribution of step-down converter products and/or the Accused Products.
>
> **Request for Production No. 35:** All documents and things between You and Nengda, related to any agreements between parties and the development of strategies directed toward product development, distribution, and sales.
>
> **Request for Production No. 36:** All documents and things that reference an established relationship between Reed and Nengda in the development and sale of step-down converter products, including but not limited to partnership agreements, emails, text messages, social media messages, virtual meeting recordings and/or transcripts, Articles of Incorporation, shareholders' agreement, and bylaws.

For each of Interrogatory Nos. 4 and 14, Reed provides objections and then the same, incomplete answer:



(Ex. 3 at 8-9, 27.)

For the four requests for production, Reed refuses to produce any documents, providing only objections:

> Reed reiterates its objection to this Request as seeking documents and things that are not relevant to the subject matter of this action, and not proportional to the needs of the case. Specifically, it requests information relating to an entity that is not a party to this action, not subject to the control of Reed, and not related to the subject matter of this action.

(Ex. 4 at 26, 27, 43, 44-45.)

## II.   LEGAL STANDARD

A party may move for an order compelling discovery when that party has received an evasive or incomplete disclosure or answer. Fed. R. Civ. P. 37(a)(1), (4); *Int'l Bus. Machines Corp. v. Zynga Inc.*, No. CV 22-590-GBW, 2024 WL 245736, at *1 n.1 (D. Del. Jan. 19, 2024). The moving party bears an initial burden that the information sought is relevant. *Zynga*, 2024 WL 245736 at *1 n.1. Then, the burden shifts to the resisting party where it must show that either "the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (citing *First Sealord Sur. V. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013)).

"'Relevance' under the Federal Rules of Evidence is famously broad." *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 178 (D. Del. 2003) (citing Fed. R. Evid. 401). "The scope of relevance in discovery is very broad – discovery must be produced 'if there is any possibility that the information sought may be relevant to the subject matter of the action.'" *Lannett Co., Inc. v. KV Pharms., Drugtech Corp.*, No. CV 08-338-JJF, 2009 WL 10737502, at *2 (D. Del. Mar. 6, 2009) (citation omitted). Relevance for discovery is broad because facts

uncovered during discovery that will not determine the ultimate issue of fact will later be eliminated as trial approaches. *Cash Today of Texas, Inc. v. Greenberg*, No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138, at *1 (D. Del. Oct. 23, 2002) (citing Fed. R. Civ. P. 26 and omitted other citations). "Therefore, only if 'it is palpable that the evidence sought can have no possible bearing upon the issues' should a court deny discovery." *Id.* (citation omitted).

### III. ARGUMENT

#### A. Nengda Is Relevant to Both Inducement and Direct Infringement

Reed's objection to providing any information concerning Nengda, aside from the one incomplete response admitting ███████████████████, is based on relevance. (Ex. 3 at 7-8, 26; Ex. 4 at 25-26, 26-27, 42-43, 44.) But relevance is "famously broad," *CP Kelco*, 213 F.R.D. at 178, and Reed's coordination with Nengda is relevant to either Reed's inducement of Nengda for indirect infringement, Nengda's coordination with Reed for direct infringement, or both. Reed and Nengda sell the exact same products, with the same specifications, applications, schematics, and even the same patented Reed technology. Thus, either Reed is sourcing Nengda, Nengda is sourcing Reed, or at a minimum the parties are collaborating on design and marketing of the Accused Products. However it happens, that coordination is relevant to Reed's indirect or direct infringement, and Reed cannot refuse to respond.

Both direct and indirect infringement are at issue in this case. MPS alleges that Reed directly infringes and indirectly infringes, including by inducing others to infringe. (D.I. 8 (First Amended Complaint) ¶¶ 43, 46.) MPS alleges inducing activities including providing "datasheets and other technical and marketing materials." (*Id.* ¶ 46.)

Nengda and Reed sell the exact same products, including accused products RS53317, RS53319, RSM3319, and RS53328 ("Accused Products").[1] (Nengda's website is for its brand IPG Semi, but the bottom of all of the IPG Semi webpages shows that they are provided by "Nengda Microelectronics." (*See, e.g.*, Ex. 5 at 5 (IPG Semi RS53317 Website, certified translation.)))[2] For example, both Nengda's and Reed's webpages for Accused Products RS53317, RS53319, and RS53328 include substantively identical schematics, feature lists, product descriptions, and application scenarios. (*Compare* Ex. 5 at 4-5 (IPG RS53317 webpage, certified translation) *with* Ex. 6 at 2-3 (Reed RS53317 webpage); *compare* Ex. 7 at 1-2 (IPG RS53319 webpage, machine translation) *with* Ex. 8 at 2-3 (Reed RS53319 webpage); *compare* Ex. 9 at 1-2 (IPG RS53328 webpage, machine translation) *with* Ex. 10 at 1-2 (Reed RS53328 webpage).) And for all four of these Accused Products, Nengda and Reed separately provide documents with substantively identical schematics, with each respective schematic (for a given product) having identical part numbers, pin labels, and circuit components. (*See* Exs. 5-10; Ex. 11 (IPG RS53317 product sheet, certified translation); Ex. 12 (Reed RS53317 product sheet); Ex. 13 (IPG RS53319 product sheet); Ex. 14 (Reed RS53319 product sheet); Ex. 15 (IPG RSM3319 product sheet); Ex. 16 (Reed RSM3319 product sheet); Ex. 17 (IPG RS53328 product sheet); Ex. 18 (Reed RS53328 product sheet).) Moreover, the public product sheets of the Reed and Nengda products, including the Accused Products RS53317, RS53319, RSM3319, and RS53328 contain the same content. (*Compare* Ex. 11 (IPG RS53317) *with* Ex. 12 (Reed RS53317); *see also* Exs.

---

[1] This is not an exhaustive list of all of the Accused Products, but instead lists four of the specific Accused Products that overlap between Reed and Nengda.

[2] MPS briefed these similarities in more detail, with many of these same exhibits, in its opposition to Nengda's motion to dismiss in the Nengda case. C.A. No. 24-166-JFM, D.I. 14 at 5-6 & Exs. 22-27. MPS is mindful of this Court's rule not to "attach as exhibits any documents that are already on the docket," Policies and Procedures Judge John F. Murphy § 2, but attaches the exhibits again here because they are not yet on the docket in this, Reed case.

13-18 (illustrating the content of the IPG Semi product sheets in Mandarin contain the same content as the Reed product sheets in English).) For instance, both Nengda's and Reed's public product sheets for products RS53317, RS53319, and RS53328 claim use of the "patented" and trademarked term "Robust Constant On Time (RCOT™) control scheme with fast transient response." (*See* Exs. 11, 12; *see also* Exs. 13, 14, 17, 18.)

Reed claims to have designed and patented these Accused Products that Nengda also sells. Reed says that ███████████████████████████████████████████████████ ████████████████████████████ (Ex. 3, at 8-9, 27), and that Reed and, specifically Reed's Vice President of Research and Development, Jiwei Fan (who is also the C.E.O. of Nengda Microelectronics), Ex. 19 (Fan Decl., Nengda D.I. 13-2); Ex. 20 at 3 (Reed Initial Disclosures), otherwise designed the Accused Products. (*Id.*; Ex. 3 at 7 ("JiWei Fan is responsible for the design of the accused products.")) And the "patented" "constant-on-time" technology touted by Nengda (and Reed) for the Accused Products refers to Reed patents. (Ex. 21 (Reed's U.S. Patent No. 11,646,651 is titled "Ramp generator for a constant on-time DC-DC converter" and lists (among others) Jiwei Fan as an inventor).)

Because Nengda is selling Accused Products that Reed claims to have designed and patented, Reed's coordination with Nengda is relevant to Reed's inducement of Nengda to infringe.[3] If Reed is supplying Nengda the products themselves, such that Nengda is a downstream reseller, then Reed's communications and agreements with Nengda relating to the Accused Products are relevant to Reed's inducement of Nengda's infringement. *See, e.g., nCube Corp. v. Seachange Intern., Inc.*, 436 F.3d 1317, 1324–25 (Fed. Cir. 2006) (documents relating

---

[3] Nengda's own infringement is the subject of the related MPS case against Nengda, Number 24-166, where MPS alleges that Nengda both directly and indirectly infringes this same patent. C.A. No. 24-166-JFM, D.I. 9 at ¶ 24, 28-35, 50, 53-55).

to downstream customer relevant to both sales and knowledge for inducement). In that case, communications and business documents between Reed and Nengda regarding downstream customers in (or targeting) the United States would also be relevant to damages for indirect infringement. *See, e.g., Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 900 F. Supp. 2d 1160, 1163 (D. Nev. 2012) (evidence of importing after foreign sales relevant to indirect infringement damages). And if Reed merely supplies supporting materials and rights like designs, documentation, patent licenses, and marketing materials, then that activity and those materials are relevant too on Reed's inducement of Nengda. *See, e.g., Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (affirming inducement where defendant provided formulas, manufacturing help, and instructions to downstream infringer). Of course, these activities and materials are even more relevant given that Nengda's relationship with Reed is that of an affiliate rather than an arms-length downstream company, as suggested by the overlapping products and management. Indeed, Reed and Nengda admit that Nengda is a "real part[y] in interest" in Reed's recently filed petition for *Inter Partes* Review of the asserted patent, (*see* Ex. 22 at 2), which is an admission that Nengda and Reed have a "preexisting, established relationship." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1351 (Fed. Cir. 2018) (describing test for real party in interest).

  If instead the Reed-Nengda relationship around the sales and marketing of the same products works in the other direction—where Nengda supplies products or supporting materials to Reed—then the information about the parties' collaboration would be relevant all the same to Reed's direct infringement. In that case it would be Nengda inducing Reed to directly infringe. Any technical information would also be relevant to the technical infringement case, and other

information about Nengda's sources for the designs or downstream business would be relevant to Reed's knowledge of infringement, both for inducement and for willfulness.

Reed's relevance objections have no basis in law or fact. Reed complains that each MPS request relating to Nengda "requests information relating to an entity that is not a party to this action, not subject to the control of Reed, and not related to the subject matter of this action." (Ex. 4, at 26, 27, 43, 44-45.) Reed's first two points have no legal basis. When MPS alleges indirect infringement, including by inducing other entities to infringe, Reed cannot credibly complain that MPS seeks information "relating to an entity that is not a party" or "not subject to the control of Reed." (*Id.*) MPS is not seeking from Reed documents in Nengda's possession; it is seeking documents in Reed's possession, custody, or control that relate to Nengda, and there is no legal basis for withholding such documents on the ground that Nengda is not a party. Reed's third charge that MPS's requests are "not related to the subject matter of this action" (Ex. 4 at 26, 27, 43, 44-45) is demonstrably wrong, given that Nengda sells at least four of the exact same Accused Products.

### B.   Reed's Responses to Interrogatory Responses 4 and 14 Are Incomplete Regarding Nengda and Should Be Supplemented

Reed's responses to Interrogatories Nos. 4 and 14 regarding Nengda are deficient and should be supplemented.

On Interrogatory No. 4, Reed has provided no response regarding the portions of the interrogatory bearing on Reed's (or its current and former employees') role in founding Nengda, the timeline, nature, and status of Reed's and Nengda's relationship, or the two entities' respective roles in decisionmaking relating to the development of Accused Products. (Ex. 1 at 9.) Particularly relevant is Reed's failure to explain "the details and circumstances by which Nengda sells Reed products." (*Id.*)

On Interrogatory No. 14, Reed's response does not address the question at all. MPS asks Reed to identify current and former Reed employees' relationships with Nengda, yet Reed's response fails to mention any current or former Reed employees. Further, Reed's response proves that someone at Reed had some relationship with Nengda, ███████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████

### C. Reed Has Entirely Refused to Produce Documents Regarding Nengda and Should Be Compelled to Produce

On Requests for Production Nos. 20, 21, 35, and 36, Reed has entirely refused to provide any documents.

These requests are relevant. Request Nos. 20 and 21 seek communications between Reed and Nengda concerning this litigation (20) and the Accused Products (step-down converters and specifically listed Accused Products) (21). Request No. 35 seeks agreements between the parties relating to those same products. And Request No. 36 seeks documents referencing the parties' relationship around the same products.

To the extent these requests seek email communications, MPS has offered to work with Reed to establish a mutual plan for email discovery and a related proposed ESI order to submit to the Court.

The Court should compel Reed to respond (with emails subject to a forthcoming email discovery plan and ESI Order).

## **CONCLUSION**

MPS requests that the Court compel Reed to fully supplement its responses to Interrogatory Nos. 4 and 14 and produce all non-privileged documents responsive to Requests for Production Nos. 20, 21, 35, and 36 within 20 days.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
| *Of Counsel:* | /s/ *John G. Day* |
|  |  |
| John P. Schnurer | John G. Day (#2403) |
| John D. Esterhay | Andrew C. Mayo (#5207) |
| Miguel J. Bombach | 500 Delaware Avenue, 8th Floor |
| PERKINS COIE LLP | P.O. Box 1150 |
| 11452 El Camino Real, Suite 300 | Wilmington, DE  19899 |
| San Diego, CA 92130-2080 | (302) 654-1888 |
| (858) 720-5700 | jday@ashbygeddes.com |
|  | amayo@ashbygeddes.com |
| W. Matthew Pierce |  |
| PERKINS COIE LLP | *Attorneys for Defendant* |
| 1900 16th Street, Suite 1400 | *Monolithic Power Systems, Inc.* |
| Denver, CO 80202 |  |
| (303) 291-2300 |  |

Dated:  May 21, 2024

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1.1 AND E.D. PENN. LOCAL CIVIL RULE 26.1(F)**

Pursuant to Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware and Rule 26.1(f) of the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania, I hereby certify that the parties made a good faith, reasonable effort to resolve the matters set forth in this motion but were unable to reach agreement. These efforts include several written correspondences on the subject of this motion, as well as a meet and confer teleconference in which counsel for the parties verbally communicated to try to resolve the matters set forth in this motion.

/s/ *John G. Day*

John G. Day

{02017854;v1 }