# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC.,<br><br>    Plaintiff, Counterclaim-Defendant,<br><br>v.<br><br>REED SEMICONDUCTOR CORP.,<br><br>    Defendant, Counterclaim-Plaintiff. | C.A. No. 1:23-cv-01155-JFM |
| MONOLITHIC POWER SYSTEMS, INC.,<br><br>    Plaintiff, Counterclaim-Defendant,<br><br>v.<br><br>REED SEMICONDUCTOR CORP.,<br><br>    Defendant, Counterclaim-Plaintiff. | C.A. No. 1:24-cv-00165-JFM |
| MONOLITHIC POWER SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NENGDA MICROELECTRONICS (SHENZHEN) CO., LTD. and NENGDA SEMICONDUCTOR TECHNOLOGY (SHENZHEN) CO., LTD.,<br><br>    Defendants. | C.A. No. 1:24-cv-00166-JFM |

## **DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

Dated: March 14, 2025

John V. Gorman (No. 6599)
Amy M. Dudash (No. 5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel.: (302) 574-3000
Email: john.gorman@morganlewis.com
Email: amy.dudash@morganlewis.com

*Attorneys for Defendants*
*Reed Semiconductor Corp.; Nengda Microelectronics (Shenzhen) Co., Ltd.; and Nengda Semiconductor Technology (Shenzhen) Co., Ltd.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 2

III. SUMMARY OF ARGUMENT ..................................................................................... 2

IV. STATEMENT OF FACTS ........................................................................................... 3

V. ARGUMENT ............................................................................................................. 6

    A. The ESI Order Requires MPS to Provide Hit Counts on Defendants' Proffered Search Queries. ........................................................................ 6

    B. MPS's Objections to Providing Hit Counts are Premature and Without Merit. ................................................................................................... 7

    C. The Practical Next Steps are for MPS to Provide Hit Results on Defendants' Proposed Searches. ........................................................... 8

VI. CONCLUSION .......................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*,
   2018 U.S. Dist. LEXIS 99812 (D. Del. Jun. 14, 2018) ............................................................... 7

*Strojnik v. Block 22 LCC*,
   2019 WL 6315523, at 2 (D. Idaho Nov. 25, 2019) ..................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) ................................................................................................. 6

U.S. Patent Nos. 9,041,377 ........................................................................................................ 2, 4

U.S. Patent Nos. 9,590,608 ........................................................................................................ 2, 4

I.     **INTRODUCTION**

More than two months after the date for substantial completion of document production, Plaintiff Monolithic Power Systems, Inc. ("MPS") has produced only 257 documents, including 42 custodial files from only a single custodian, and MPS refuses to provide hit counts (let alone produce those hits) for *any* ESI search queries served by Defendants Reed Semiconductor Corp., Nengda Microelectronics (Shenzhen) Co., Ltd., and Nengda Semiconductor Technology (Shenzhen) Co., Ltd. ("Defendants").  MPS's refusal is a violation of the ESI Order, which requires MPS to "provide the volume of documents returned by the searches on a custodian-by-custodian and term-by-term basis as part of [the] good faith meet and confer" process.  This is merely step one in the process of obtaining email discovery, a process in which MPS simply refuses to engage.

MPS's refusal to engage in the ESI discovery process is prejudicing Defendants' ability to prepare their cases.  With the deadline for close of fact discovery only two months away, there is no justification or excuse for MPS's refusal to meaningfully engage in discovery as part of the cases it elected to bring.

Defendants therefore respectfully request an Order compelling Plaintiff to comply with the parties' ESI Order.  Specifically, Defendants request that MPS be ordered to provide the number of documents responsive to the ten searches queries proffered by Defendants, including total hit results before and after deduplication, and broken down by custodian and search term so that Defendants can work with MPS to refine the search terms as appropriate.  Defendants further request that the Court order the parties to thereafter submit a one-page joint letter to the Court stating the parties' progress in resolving issues with Defendants' search queries (including identifying which, if any, custodians and search queries to which MPS maintains an objection) and requesting Court assistance if necessary.  Defendants further request that the joint letter attach a

table of hit counts for each of Defendants' search queries provided by MPS on a term-by-term and custodian-by-custodian basis, as well as totals before and after de-duplication.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff accuses Defendants of infringing certain claims in U.S. Patent Nos. 9,590,608 and 9,041,377 (the "Asserted Patents"). Pursuant to the Court's Scheduling Order (D.I. 81), the above-captioned actions were consolidated. The Court held a *Markman* hearing on December 19, 2024 and issued its Claim Construction Order on January 10, 2025 (D.I. 180). Discovery between the parties has been ongoing for more than a year. After the above-captioned actions were consolidated, it was ordered that document production was to be substantially completed by January 6, 2025, with fact discovery completed by February 24, 2025. D.I. 81, ¶¶ 4.a,-b. On January 27, 2025, the Court accepted the parties' stipulation to amend the schedule, with fact discovery now set to end on May 23, 2025. D.I. 190 at 2.

## III.    SUMMARY OF ARGUMENT

1. MPS has failed to follow the Court's ESI procedures. This Court's ESI Order requires MPS to provide hit counts in response to Defendants' proffered search queries. The ESI Order sets forth the procedure for obtaining email documents, whereby the requesting party must propound specific email production requests – with up to 15 "search queries" per custodian. If the producing party objects to the proposed searches based on undue burden, the parties are to meet and confer in good faith. As part of this good faith meet and confer, the producing party – here, MPS – must provide the volume of documents returned by the search results, *i.e.*, the hit counts.

2. While MPS argues that Defendants' search terms are overbroad, this is exactly the issue that the ESI Order seeks to address by requiring the producing party to provide the hit counts for the requested search queries. Yet, MPS refuses to provide these hit counts and, in so doing,

2

refuses to participate in the ESI process required by the ESI Order. Thus, MPS's arguments about overbreadth of search terms are premature and without merit. Overbreadth is properly analyzed in the context of hit count quantity, which MPS refuses to provide. MPS's arguments that Defendants' proposed searches are facially too broad are not only inconsistent with the process set forth in the ESI Order, but they are belied by MPS's own search terms, which are of similar breadth.

3.  MPS must provide hit counts for Defendants' proposed searches as originally framed. If, after providing the hit counts, MPS maintains its objections based on the number of hits, then the parties can discuss ways to narrow Defendants' proposed searches – exactly as the ESI Order provides and requires. During the meet and confer process, MPS was unable to articulate any undue burden with respect to providing hit counts and proceeding in the manner required by the ESI Order. Nor can it. The Court should also Order the parties to provide a joint letter to the Court on their progress with ESI discovery made after MPS provides hit counts, as detailed below.

## IV. STATEMENT OF FACTS

On July 12, 2024, the Court entered the ESI Order, which permits "fifteen (15) search *queries* per custodian per party," and is the only way to obtain email production. D.I. 91 ¶¶ 7.a., 7.d. (emphasis added). After the requesting party propounds its search queries, the parties must follow the procedure set forth in ¶ 7.e., which describes the process for narrowing and/or reassessing the search queries to avoid unduly burdening the producing party. After the producing party objects to the search queries, but before the parties meet and confer to discuss ways to limit the number of false hits, the producing party must *first* "provide the volume documents returned

by the searches." D.I. 91 ¶¶ 7.e. This process is designed to limit the number of false hits and thereby avoid unduly burdening the producing parties. *Id.*

Per the ESI Order process, on February 4, 2025, Defendants served MPS with ten proposed search queries for eight custodians with each proffered search query focused on a specific topic.[1]

---

[1] Those search queries and the specific topics to which they relate are as follows:

1. **The Defendants:** Reed OR Nengda OR IPGSemi OR "IPG Semi"

2. **The Asserted Patents, foreign counterpart patents and patent applications, as well as those being related by subject matter and named inventor:** (patent* OR applic*) AND (608 OR '608 OR 9590608 OR 9,590,608 OR 900 OR '900 OR 14/823,900 OR 14823900 OR 823900 OR 823,900 OR 642 OR '642 OR 2016/0043642 OR 20160043642 OR 0043642 OR 708 OR '708 OR 201410390708 OR (Li W/2 Xu) OR 377 OR '377 OR 9,041,377 OR 9041377 OR 815 OR '815 OR 13/538,815 OR 13538815 OR 538,815 OR 538815 OR 221 OR '221 OR 2013/0002221 OR 20130002221 OR 0002221 OR 295 OR '295 OR 201110181295* OR (Rui W/2 Wang) OR (Zhengwei W/2 Zhang) OR 162 OR '162 OR 201210315162* OR 580 OR '580 OR 201410658580*)

3. **Accused Products**: RS53317 OR RS53319 OR RS53328 OR RS53355 OR RSM3318 OR RSM3319 OR 53317 OR 53319 OR 53328 OR 53355 OR 3318 OR 3319

4. **MPS Products that MPS contends practice the Asserted Patents:** MPQ8623* OR MPQ8626* OR MPQ8633* OR MPQ8634* OR MPQ8637* OR MPQ8645* OR MPQ8655* OR 8623* OR 8626* OR 8633* OR 8634* OR 8637* OR 8645* OR 8655*

5. **Financials related to the technology of the Asserted Patents:** (sale* OR "purchase* order*" OR PO OR revenue OR profit* OR ROI OR "return on investment" OR import* OR export* OR project* OR financ* OR balance* OR cost* OR expense* OR budget* OR valu* OR demand* OR ship* OR (business w/3 opportunit*) OR baseline* OR adopt* OR "product portfolio*" OR roadmap OR pric* OR market*) AND ("point of load" or "point-of-load" OR POL OR (bootstrap W/4 circuit) OR ((stepdown OR "step-down" OR "step down" OR buck) W/3 (converter* OR regulator*)))

6. **Licensing and collaborative agreements related to the technology of the Asserted Patents:** (licens* OR agree* OR contract* OR "statement of work" OR SOW OR indemn* OR covenant* OR CNS OR preclud* OR grant* OR right* OR collaborat*) AND ("point of load" or "point-of-load" OR POL OR (bootstrap W/4 circuit) OR "power management" OR ((stepdown OR "step-down" OR "step down" OR buck) W/3 (converter* OR regulator*)))

7. **Technological and economical advantages or disadvantages with using the technology of the Asserted Patents:** (instruct* OR manual* OR guid* OR assist* OR spec* OR advantag* OR disadvantag* OR benefit* OR importan* OR valu* OR differentiat* OR strateg* OR "business case" OR econom* OR goal* OR plan* OR milestone* OR approach* OR target* OR service OR train* OR support*) AND ("point of load" or "point-of-load" OR POL OR (bootstrap W/4 circuit) OR ((stepdown OR "step-down" OR "step down" OR buck) W/3 (converter* OR regulator*)))

8. **Market and competitive information related to the technology of the Asserted Patents:** (market* OR forecast* OR industry* OR compet* OR trend*) AND ("point of load" or "point-of-load" OR POL OR (bootstrap W/4 circuit) OR ((stepdown OR "step-down" OR "step down" OR buck) W/3 (converter* OR regulator*)))

9. **Customers and target customers for the technology of the Asserted Patents:** (AMD OR Xilinx OR 超威) OR ( Meta OR 脸书) OR (Microsoft OR 微软) OR (Nvidia OR 英伟达) OR (Apple OR 苹果) OR (Cisco

4

Ex. A at 2-3.  In response, and notwithstanding its own service of broad search terms (Ex. B), MPS objected to each of Defendants' search queries on their face and refuses to provide hit counts so that the parties can even begin to engage in a good faith meet and confer as required by the ESI Order. Ex. C at 7-8, (2025-02-24 Email from W.M. Pierce), at 1 (2025-3-6 Email from P. Wolfe) ("We understand that MPS's position is that *each* of the proffered search queries are unreasonable . . . ." (emphasis added)).  MPS cannot ignore its obligations and stalwart progress of the discovery process.

MPS's refusal to engage in the ESI discovery process despite the clear terms of the ESI Order is particularly egregious given the status of MPS's document production.  Now, more than two months past the date for substantial completion of document production, MPS has produced only 257 documents.  And, within that 257, it was not until March 7, 2025 (less than a week before this Motion) that MPS produced its first custodial files: 42 documents from a single custodian.  On the whole, 53 of the 257 documents that MPS has produced are publicly-filed SEC reports and 44 are publicly-available file histories or assignments for the asserted patents.

---

OR 思科) or (HPE OR HP* OR Aruba OR 安移) OR (Senao OR 神脑) (Alpha OR 阿尔法) OR (Ennocomm OR Ennoconn OR Vecow OR Caswell OR 桦汉) OR (Juniper OR 瞻博) OR ("Extreme Series" OR 极限系列 OR 极限网络 OR 极度系列 OR 极度网络 OR 极致系列 OR 极度网络) OR Foxconn OR Accton OR Quanta OR Wiwynn OR Amazon* OR AWS OR Alphabet OR Google OR Flex OR Senao OR "Cloud Network" OR Digi*Key OR Edom OR NuVision OR "WT Micro*" OR Briocean" OR Avnet OR WPG OR Intel OR "E*Commerce" OR "VM Serv*" OR "Future Elec*" OR Mouser* OR "Asian Info*" OR Ingrasys OR Takachiho OR "Symmetry Elec*" OR NSG OR Huawei OR "Hong Tech" OR "Phoenix" OR Facebook OR Oculus OR Juniper OR (Hewlett AND Packard AND Enterprise*) OR (Extreme AND Networks) OR VMWare OR Versa OR Watchguard OR Artista

10. **Texas Instrument products and related patents and publications that Defendants assert is prior art to the Asserted Patents:** (TPS51218 OR 51218 OR TPS51219 OR 51219 OR TPS54110 OR 54110 OR TPS54620 OR 54620 OR TPS54560 OR 54560 OR D-CAP* OR (Tetsuo W/2 Tateishi) OR (Shinobu W/2 Aoki) OR '887 OR 887 OR 8,476,887 OR 8576887 OR 708 OR '708 OR 2009/0140708 OR 20090140708 OR 0140708) AND (patent* OR applic*)

5

V.     ARGUMENT

    A.     **The ESI Order Requires MPS to Provide Hit Counts on Defendants' Proffered Search Queries.**

Under the ESI Order, MPS must provide hit counts for Defendants' proposed search queries. The ESI Order sets forth the procedure for obtaining email documents, whereby the requesting party must propound specific email production requests – with up to fifteen "search queries" per custodian. D.I. 91, at ¶ 7.e. If the producing party objects to the proposed searches based on a potentially unduly burdensome quantity of excessive or irrelevant information ("false hits"), the parties are required to meet and confer to limit the burden. As part of this good faith meet and confer, the producing party – here, MPS – must provide the volume of documents returned by the search results, *i.e.*, the hit counts.

MPS refuses to do any of this. In fact, MPS has not bothered even to run any of the searches. Instead, MPS simply refuses to engage in the required process because it deems Defendants' terms as a whole to be overbroad and excessive. But, as the ESI Order recognizes, the reality is that the process of running the search terms and providing the hit counts is not unduly burdensome. Until MPS actually runs the searches and determines the hit counts, its claims of overbreadth are unsupported. If MPS believes that the search terms are overbroad, it must provide the hit counts to support its belief as the ESI Order requires. *See Strojnik v. Block 22 LCC,* 2019 WL 6315523, at 2 (D. Idaho Nov. 25, 2019) (noting "the party discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper."). Accordingly, an Order compelling MPS to provide the hit counts on Defendants' proposed search queries "on a custodian-by-custodian and term-by-term basis" is warranted.

6

**B.     MPS's Objections to Providing Hit Counts are Premature and Without Merit.**

The entire point of the ESI Order's requirement that the parties provide hit counts is to address any potential overbreadth in search queries at the initial stage of the ESI process. Yet, MPS refuses to participate in this process. As a result, MPS's arguments about the ESI search terms being overbroad and "excessive" are premature and without merit. *See* Ex. C, at 6 (2025-02-24 Email from W.M. Pierce), *Id.* at 4 (02-27-2025 W.M. Pierce email). In fact, each of Defendants' search terms is keyed to a "reasonably focused" category of documents. *See supra*, at A. Specifically, Defendants' drafted their search terms to capture documents relevant to Defendants' inequitable conduct claims, MPS's damages claims, and Defendants' defenses, as well as documents relevant to infringement and invalidity issues. *See AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 U.S. Dist. LEXIS 99812, at *6 (D. Del. Jun. 14, 2018) (finding search terms "chosen from language contained in the patents-in suit, employ[ed] reasonable search limitation strategies, and appear[ed] to be reasonably focused."). And, without hit counts to substantiate any claim of undue burden, there is no basis for MPS to refuse production. *See id.*; D.I. ¶ 7.e.

Nevertheless, MPS's objections to providing hit counts in the first instance are without merit. Absent any evidence that the Defendants' search queries retrieve an excessive amount of hits, there is no reason to conclude that Defendant's queries are overbroad. First, MPS objects to Defendants' use of the word "OR" to supposedly "compound well over a hundred different queries into its ESI Request." Ex. C at 4 (2025-03-06 Email from W.M. Pierce). But MPS misses the mark entirely. For example, the *AbbVie* search terms similarly used the "OR" connector, and the court granted defendants' motion to compel. *AbbVie,* 2018 U.S. Dist. LEXIS 99812 at *7-*8.[2] Second,

---

[2] Examples of allowed search terms in *AbbVie* included:

7

MPS objects to the search terms using company names, Ex. C at 8 (2025-02-24 Email from W.M. Pierce). However, Defendants are merely mirroring, at least in part, MPS's use of company names in its proposed search terms, such as its first term: "Monolithic or MPS or [starts with]MP? or 芯源 or M公司.". Ex. B at 2.

Any overbreadth can only be evaluated in the context of the volume of documents returned by the searches on a custodian-by-custodian and term-by-term basis. As such, and as required by the ESI Order, MPS must provide the hit counts to move this process forward.

### C. The Practical Next Steps are for MPS to Provide Hit Results on Defendants' Proposed Searches.

With the end of fact discovery fast approaching the discovery substantial completion date long in the rear-view mirror, and the lack of any meaningful document production by MPS, the practical next steps to avoid further undue prejudice to Defendants are for MPS to be Ordered to run the Defendants' search queries and for the parties thereafter to follow the ESI Order's procedure for avoiding an unduly burdensome quantity of "false hits." MPS has articulated no burden associated with obtaining these hit counts, and there is no other justifiable reason not to proceed in this manner. Indeed, it seems to be the only practical path forward so that Defendants are not left to guess as to what might be viewed as a reasonable "search query" by MPS as the fact-discovery clock quickly winds down.

---

1. (*stable OR *stabil* OR (freez* AND thaw*) OR ultraviolet OR UV OR vise* OR aggregat* OR precipitat* OR particulate* OR calor* OR electro* OR shak* OR ((25 OR 30 OR 40 OR 2 OR 8) w/5 (degree*)) OR (25° OR 30° OR 40° OR 2° OR 8°) OR (shelf w/2 life) OR (mass w/5 spectr*) OR [*8] "mass spec" OR (size w/5 exclu*) OR SEC OR GPC OR GFC OR "gel filtration" OR deamid* OR denat* OR degrad* OR clip*) W/200 (Humira OR Humira* OR D2E7 OR adalimumab OR LU200134 OR "LU 200134" OR 125057)

2. (NaCI OR sodium chloride OR PS80 OR PS20 OR "PS 80" OR "PS 20" OR pH) W/200 (Humira OR Humira* OR D2E7 OR adalimumab OR LU200134 OR "LU 200134" OR 125057)

The Court's Order should require MPS to run Defendants' proposed search queries, and – at the very least – identify the number of hits returned on a custodian-by-custodian and term-by-term basis, as well as totals before and after de-duplication within five business days. To keep things moving, Defendants also request that the Court order that, after MPS has run hit counts and after the parties meet and confer regarding those hit counts, the parties must submit a one-page joint letter to the Court. In that one-page letter, the parties should provide an update on progress, identify any search terms or custodians to which MPS objects, and request the Court's guidance if necessary. Defendant's further request that the joint letter attach the hit counts provided by MPS in the manner described above.

## VI.   CONCLUSION

Defendant respectfully requests that the Court enter an order (a) compelling MPS to provide hit counts for the ten search terms, including total hit results before and after deduplication, and broken down by custodian and search term within five business days, and (b) directing the parties, after meeting and conferring, to submit a one-page joint letter to the Court that identifies (i) the parties' progress on these issues, (ii) the custodians and search queries, if any, for which MPS maintains an objection, and (iii) the hit counts as provided in (a) above. If the parties would like to request further guidance from the Court on this issue, Defendants submit that should be noted in the one-page joint letter.

| | |
|---|---|
| Date: March 14, 2025 | Respectfully submitted, |
| | **MORGAN, LEWIS & BOCKIUS LLP** |
| *Of Counsel:* | /s/ *John V. Gorman* |
| Andrew J. Gray IV (*pro hac vice*) | John V. Gorman (No. 6599)<br>Amy M. Dudash (No. 5741) |

1400 Page Mill Road
Palo Alto, CA 94304-1124
Tel.: (650) 843-4000
Email: andrew.gray@morganlewis.com

Andrew V. Devkar (*pro hac vice*)
2049 Century Park East
Suite 700
Los Angeles, CA 90067-3109
Tel.: (310) 907-1000
Email: andrew.devkar@morganlewis.com

Karon N. Fowler (*pro hac vice*)
110 North Wacker Drive
Chicago, IL 60606-1511
Tel.: (312) 324-1000
Email: karon.fowler@morganlewis.com

Calvin M. Brien (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel.: (202) 739-3000
Email: calvin.brien@morganlewis.com

Phillip D. Wolfe (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103-3007
Tel.: (215) 963-5000
Email: phillip.wolfe@morganlewis.com

Avery Joseph Welker (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel.: (713) 890-5000
Email: avery.welker@morganlewis.com

1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel.: (302) 574-3000
Email: john.gorman@morganlewis.com

*Attorneys for Defendant Reed Semiconductor Corp., Nengda Microelectronics (Shenzhen) Co., Ltd., and Nengda Semiconductor Technology (Shenzhen) Co., Ltd.*